UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| SHAKEEL AHMED, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 4:13CV269 HEA |
| | ) |
| SHAHID ALI BANGASH, | ) |
| | ) |
| Defendant. | ) |

## **OPINION, MEMORANDUM AND ORDER**

This matter is before the Court on Defendant's Motion to Dismiss Plaintiff's Complaint for Lack of Personal Jurisdiction, Forum Non Convenient or in the Alternative, to Quash Service of Process, [Doc. No 14]. Plaintiff opposes the Motion. For the reasons set forth below, Defendant's Motion to Dismiss will be granted.

### **Facts and Background**

Plaintiff's Complaint alleges the following facts:

Plaintiff is a citizen of Missouri. Defendant Shahid Ali Bangash is a citizen of Texas and holds himself out as an investment advisor specializing in certain overseas investments in Pakistan. He is the second-highest ranking board member of Defendant Global Health Services, Limited Islamabad, and its second longest-serving member since the time of its formation. Shahid is using, or has in the past,

used, certain aliases including Shahid A. Bangash and Shahid Ali. He is believed to be the owner and president of Defendant Bangash Investments, Inc., as well as its registered agent.

Defendant Shaukat A. Bangash is a dual citizen of the Islamic Republic of Pakistan and the United States of America. Plaintiff believes Shaukat maintains his residence in the city of Islamabad, Islamic Republic of Pakistan. Shaukat holds himself out to the public as Chief Executive of Global Health Services Ltd. And the director of investments and investor relations for Global. It is believed Shaukat is the senior board member of Global.

Defendant Bangash Investments, Inc. is a Texas corporation with its principal place of business in Dallas County, Texas. Bangash Investments, Inc. holds itself out to the public through the words and conduct of its employees, officers and directors as an investment firm specializing in the overseas investments and particularly with investment opportunities within the Islamic Republic of Pakistan. Most, if not all revenues, investments, funds, and financial resources invested through Bangash Investments are routed and funneled to the accounts of Global Health Services, Quaid-E-Azam International Hospital, Islamabad, Shahid, Shaukat.

Defendant Global Health Services Ltd. is a Pakistan limited company and a

going concern that was formed in the Islamic Republic of Pakistan. Plaintiff believes it failed to properly register the securities it offers on the public market through the local governing agency, the Securities and Exchange Commission of Pakistan, since 2008.

Quaid-E-Azam International is wholly owned and operated by Global and under the direction and control of Shaukat and Shahid.

Plaintiff further alleges that it was introduced to Defendants in or around 2007 in Missouri through various advertisements and informational seminars of Shaukat and Global Health that he saw on the local Pakistani language televison station broadcast in Missouri. These advertisements and seminars were marketing a certain investment opportunity in Pakistan relating to a hospital facility in Islamabad, Pakistan.

Defendants were actively seeking investors to fund certain capital improvements and operations of Quaid-E-Azam International's facilities located n Islamabad. Defendants represented to Plaintiff that his investment in Global Health would be used to build the hospital facilities for Huaide-Azam International and finance operations. Defendants represented to Plaintiff that his funds would be pooled together with funds from hundreds of other investors.

Plaintiff contacted Defendants to inquire about the Hospital Investment and

to obtain more information. Plaintiff claims Shahid, Shaukat, Bangash Investments and Global Health directed numerous communications, including telephone calls, written correspondences and others to Plaintiff in Missouri to sell Plaintiff the Hospital Investment. As a result of these communications, Plaintiff invested $200,000.00 in the Hospital Investment.

Shaukat represented to Plaintiff that the investment would yield a ten percent (10%) return frm the start. Defendants, through Shaukat, Shahid and Bangash Investments represented to Plaintiff that he could withdraw his investment at any time upon three months' notice.

Plaintiff ultimately invested an additional $200,000.00 in 2010 in exchange for an ownership interest in Global Health and Quaid-E-Azam International.

Plaintiff asked for reimbursement of his money; Defendants failed to do so, but have used his money for their own purposes including to fund their own lifestyles and various holdings.

The Complaint contains a claim for breach of contract (Count I), breach of duty of good faith and fair dealing, (Count II),fraud and rescission, (Count III), imposition of constructive trust, (Count IV), breach of fiduciary duty, (Count V), unjust enrichment, (Count VI), conversion, (Count VII), assumpsit and money had and received, (Count VIII), action arising under the Missouri Merchandising

Practices Act, (Count IX), equitable accounting, (Count X), and injunctive relief (Count XI).

Defendant Shahid Ali Bangash moves to dismiss this matter for lack of personal jurisdiction over him. Plaintiff opposes the motion, and the parties have conducted extensive briefing.

**Discussion**

"The party seeking to establish the court's in personam jurisdiction carries the burden of proof, and the burden does not shift to the party challenging jurisdiction." *Epps v. Stewart Info. Services Corp.*, 327 F.3d 642, 647 (8th Cir.2003). Considering that a plaintiff is only required to make a prima facie showing of jurisdiction to defeat a motion to dismiss pursuant to Rule 12(b)(2), "the court must view the evidence in the light most favorable to the plaintiff and resolve all factual conflicts in the plaintiff's favor." *DigiTel Holdings, Inc. v. Proteq Telecomm. (PTE), Ltd.*, 89 F.3d 519, 522 (8th Cir.1996) (citing *Dakota Indus., Inc. v. Dakota Sports Wear, Inc.*, 946 F.2d 1384, 1387 (8th Cir.1991)). Nevertheless, "[t]he plaintiff's 'prima facie showing' must be tested, not by the pleadings alone, but by the affidavits and exhibits presented with the motions and opposition thereto." *Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1072 (8th Cir.2004) (citation omitted).

In undertaking an analysis of personal jurisdiction, the Court must examine whether the exercise of such jurisdiction is proper under the long-arm statute of the forum state, Missouri. *The Austad Co. v. Pennie & Edmonds,* 823 F.2d 223, 225 (8th Cir.1987). Missouri's long-arm statute provides in relevant part as follows:

> Any person or firm, whether or not a citizen or resident of this state, or any corporation, who in person or through an agent does any of the acts enumerated in this section, thereby submits such person, firm, or corporation, and, if an individual, his personal representative, to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any of such acts:
>
> ...
>
> (3) The commission of a tortious act within this state[.]
> ...

Mo.Rev. Stat. § 506.500. "Missouri's long-arm statute covers extraterritorial tortious acts that yield consequences in Missouri." *Furminator, Inc. v. Wahba*, 2011 WL 3847390, at *2 (E.D.Mo. Aug. 29, 2011) (citing *Bryant v. Smith Interior Design Group, Inc.*, 310 S.W.3d 227, 232 (Mo.2010)); see also *Myers v. Casino Queen*, 689 F.3d 904, 910 (8th Cir.2012).

Additionally, "due process requires 'minimum contacts' between [a] non-resident defendant and the forum state such that 'maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Burlington*

*Indus., Inc. v. Maples Indus., Inc.*, 97 F.3d 1100, 1102 (8th Cir.1996) (quoting *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291–92 (1980)). In addition, there must be evidence of "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum [s]tate, thus invoking the benefits and protections of its laws." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985).

> The Supreme Court has observed:
>
> Even if the defendant would suffer minimal or no inconvenience from being forced to litigate before the tribunals of another State; even if the forum State has a strong interest in applying its law to the controversy; even if the forum State is the most convenient location of litigation, the Due Process Clause, acting as an instrument of interstate federalism, may sometimes act to divest the State of its power to render a valid judgment.

*World–Wide Volkswagen*, 444 U.S. at 294.

There are two ways in which the due process clause may be satisfied such that minimum contacts between the defendant and the forum state are established: the first way is through general jurisdiction, and the second way is through specific jurisdiction. General jurisdiction refers to the power of a court to hear a lawsuit against a defendant who has "continuous and systematic" contacts with the forum state, regardless of where the cause of action actually arose. *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 415–16 (1984). Here,

Plaintiff concedes that the Court cannot maintain general personal jurisdiction over Defendant. Instead, Plaintiff argues that the Court has the power to exert specific jurisdiction over Defendant, as Defendant has allegedly directed his activities to Missouri, and Plaintiff's lawsuit "relates to" or "arises from" those activities. *Johnson v. Arden*, 614 F.3d 785, 794–95 (8th Cir.2010).

"Specific personal jurisdiction, unlike general jurisdiction, requires a relationship between the forum state, the cause of action, and the defendant." *Myers*, 689 F .3d at 912, (citing *Helicopteros*, 466 U.S. at 414). The Eighth Circuit has established a five-factor test to determine whether a defendant's contacts with the forum state are sufficient to establish personal jurisdiction over the defendant. These factors, from *Land–O–Nod v. Bassett Furniture Industries, Inc.*, 708 F.2d 1338, 1340 (8th Cir.1983), are: (1) the nature and quality of contacts with the forum state; (2) the quantity of such contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties. "[The court] must look at all of the factors in the aggregate and examine the totality of the circumstances in making a personal jurisdiction determination." *Johnson*, 614 F.3d at 794 (citation omitted).

In addition to the five *Land–O–Nod* factors, the Court must consider

whether a defendant's intentional acts were performed "for the very purpose of having their consequences felt in the forum state." *Dakota*, 946 F.2d at 1390–91. This is known as the "effects test," and it was first employed by the Supreme Court in *Calder v. Jones*, 465 U.S. 783 (1984). The *Calder* court found that the defendants were subject to California's personal jurisdiction because the defendants' acts were intentional, the allegedly libelous article they wrote was centered on the life and career of a longstanding California resident, "and the brunt of the harm, in terms both of Plaintiff's emotional distress and the injury to her professional reputation, was suffered in California." *Id.* at 789. Because the defendants' acts were "expressly aimed at California," and they knew that "injury would be felt by Plaintiff in the State in which she lives and works and in which the National Enquirer has its largest circulation," the defendants were assumed to have reasonably anticipated being haled into court in the forum state. *Id.* at 789–90.

Turning to the case at bar, Plaintiff contends that specific jurisdiction is proper because Missouri is where the brunt of the harm and injury would be felt by Plaintiff. In other words, Plaintiff relies primarily on the "effects test" articulated in *Calder* in making his prima facie showing of personal jurisdiction. Although the holding in *Calder* may certainly constitute a basis for a court's finding of

personal jurisdiction, the Eighth Circuit has cautioned that the five *Land–O–Nod* factors listed above must still be weighed in every personal jurisdiction analysis. *Johnson*, 614 F.3d at 796. The *Calder* test is "merely ... an additional factor to consider when evaluating a defendant's relevant contacts with the forum state ." *Id.*; *Dakota*, 946 F.2d at 1391 ("In relying on *Calder*, we do not abandon the five-part test ... We simply note that *Calder* requires the consideration of additional factors when an intentional tort is alleged."). Accordingly, as the Complaint's allegations of fraud is intentional and tortious in nature, the Court will explore the five *Land–O–Nod* factors as well as the *Calder* test in assessing whether personal jurisdiction exists over this Defendant.

*Land–O–Nod* Factors

**Nature and Quality of Contacts**

The first *Land–O–Nod* factor concerns the nature and quality of a defendant's contacts with the forum state, which in this case is Missouri. It is undisputed that Defendant has never maintained business, property, offices, employees, or agents in Missouri, and none of Defendant's agents or employees have ever traveled to Missouri for business.

Plaintiff gives examples of "direct" contacts between Defendant and Plaintiff. The first is in the form of advertisements on the Pakistani television

station which he watched in Missouri. Plaintiff, however, has failed to present evidence that the television commercials and seminars were directed specifically to Missouri citizens, and were not sent out to various other states.

Plaintiff also points to some email communications sent from Plaintiff to Defendant. These emails only serve to reinforce the Court's conclusion that Defendant had no meaningful, direct contact with Plaintiff in Missouri, but instead were Plaintiff initiating contact with Defendant. Defendant took no affirmative actions with regard to Plaintiff in Missouri. Such attenuated contacts are not of the nature and quality that the Court considers sufficient under the Due Process Clause. Furthermore, even if direct, one-on-one emails between the parties existed, a review of the relevant Eighth Circuit case law reveals that, in general, if a defendant's connection to the forum state is established merely through emails, calls, or faxes sent back and forth, such contacts alone do not satisfy Due Process. See, e.g., *Viasystems*, 646 F.3d at 594 (scattered emails, phone calls, and wire transfers do not constitute deliberate and substantial connection with forum state); *Digi–Tel*, 89 F.3d at 523 (numerous letters, faxes, and phone calls to forum state not enough to create jurisdiction); *Porter v. Berall*, 293 F.3d 1073, 1076 ("Contact by phone or mail is insufficient to justify exercise of personal jurisdiction under the due process clause.").

After careful consideration, the Court concludes that Defendant's contacts with Plaintiff are insufficient to constitute purposeful availment of the laws of Missouri. "The purposeful availment requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts or of the unilateral activity of another party or a third person.

Jurisdiction is proper, however, where the contacts proximately result from actions by the defendant himself that create a substantial connection with the forum State." *Stanton v. St. Jude Med., Inc.*, 340 F.3d 690, 693–94 (8th Cir.2003) (citation omitted) (emphasis in original). Here, the Court finds that, in keeping with the requirements of the Due Process Clause and the holding of the Supreme Court in *International Shoe Co. v. Washington*, "traditional notions of fair play and substantial justice" would be offended if this Court exerted personal jurisdiction over Defendant. The Court therefore finds that, due to the nature and quality of the contacts between the parties, Defendant could not have reasonably anticipated being haled into court in Missouri, and thus, the first *Land–O–Nod* factor weighs in favor of Defendant.

**Quantity of Contacts**

Because the nature and quality of the contacts between Defendant and Missouri are insufficient to confer specific jurisdiction, the numerosity of such

contacts is immaterial to the Court's analysis. The second Land–O–Nod factor weighs in favor of Defendant.

**Relation of the Cause of Action to the Contacts**

The third factor focuses on a defendant's contacts with the forum state with respect to the particular cause or causes of action asserted. *Bell Paper Box, Inc. v. U.S. Kids, Inc.*, 22 F.3d 816, 819 (8th Cir.1994). Here, Plaintiff alleges a cause of action for fraud. Again, this Defendant has submitted documentation that he never initiated contact with Plaintiff, he had not been to Missouri with regard to the alleged wrongful acts and he did not participate in the negotiation of the investment by Plaintiff into the program of which Plaintiff complains.

**Interest of Forum and Convenience of Parties**

Before the Court considers the final two *Land–O–Nod factors*, it is important to recognize that they cannot outweigh the first three factors. See *Land–O–Nod*, 708 F.2d at 1340 ("For instance, the last two factors are said to be of secondary importance and not determinative.") Even if the Court were to <u>assume</u> that the fourth factor, which concerns the interest of the forum in litigating this matter, weighed in favor of Plaintiff, the fifth factor, which concerns the convenience of the parties, must weigh in favor of Defendant. The Court finds that litigating this case in Missouri would be inconvenient not only to Defendant and

his witnesses, but also potentially to Plaintiff, whose witnesses are likely to include persons located in Pakistan. The Court therefore concludes that though the fourth *Land–O–Nod* factor <u>may</u> weigh in favor of Plaintiff, the fifth *Land-O–Nod* factor does not. Missouri's "interest in providing its residents with a forum cannot make up for the absence of minimum contacts." *Digi–Tel*, 89 F.3d at 525.

### *Calder* **Effects Test**

In addition to the five-part *Land–O–Nod* test, the Court must also weigh whether the brunt of the injury allegedly incurred by Plaintiff was most strongly felt in the forum state, pursuant to the *Calder* "effects" test. Under certain circumstances, personal jurisdiction can be exerted over a tortfeasor that intentionally directs its tortious acts to the forum state. *Calder*, 465 U.S. at 789.

The Court agrees that any injuries suffered by Plaintiff would be felt most readily in Missouri, the state of Plaintiff's residence. However, it is not the case that personal jurisdiction over a defendant will be presumed merely because an intentional tort has been alleged. The Eighth Circuit has "construe[d] the *Calder* effects test narrowly, and [held] that, absent additional contacts, mere effects in the forum state are insufficient to confer personal jurisdiction." *Johnson*, 614 F.3d at 796–797. Ergo, even if Plaintiff could establish Defendant committed acts of fraud felt most strongly by Plaintiff in Missouri, this facts alone would be

insufficient to confer personal jurisdiction over Defendant pursuant to the *Calder* test. Something more than mere effects is needed.

Cases decided throughout this Circuit uniformly hold that in order for a defendant's tortious conduct to confer personal jurisdiction, there must be a prima facie showing that the defendant's intentional acts were "performed for the very purpose of having their consequences felt in the forum state." *Dakota*, 946 F.2d at 1391 (internal citation omitted). See, e.g., *Johnson*, 614 F.3d at 796 (no personal jurisdiction where defendant's allegedly defamatory comments not expressly aimed at forum, and no other evidence of minimum contacts existed); *Express Scripts, Inc. v. Care Continuum Alliance, Inc.*, 2011 WL 2199967, *4 (E.D. Mo. June 7, 2011) (no personal jurisdiction where defendant did not knowingly target trademark infringement at forum, and defendant had no other contacts with forum); *Hicklin Eng'g, Inc. v. Aidco, Inc.*, 959 F.2d 738, 739 (8th Cir.1992) (no personal jurisdiction where defendant had knowledge that plaintiff would be affected by intentional tort, but otherwise had no other connection with forum); *Gen. Elec. Capital Corp. v. Grossman*, 991 F.2d 1376, 1387 (8th Cir.1993) (no jurisdiction where "focal point" of the tortious injury occurred in outside forum, even though court agreed that effects of harm ultimately were felt in forum).

Even a close examination of *Calder* reveals that the Supreme Court's

finding of personal jurisdiction in that case depended on something more than the defendants' knowledge that the plaintiff would feel the brunt of the injury in her state of residence. 465 U.S. at 1484–85. Other contacts between the defendants and the forum state were found in *Calder*, including the fact that the defendants made frequent trips to the forum for business, made direct phone calls to residents of the forum in furtherance of the tort, and published the defamatory article about the plaintiff in the forum, a state where the defendants' publication had its highest circulation. *Id*. All of these facts combined evidenced the *Calder* defendants' purposeful availment of the forum and justified the court's exertion of personal jurisdiction over them.

Indeed, Plaintiff in this action is well aware of the requirement of something more than merely the brunt of the tortious act occurring in Missouri. In *Ahmed v. Aviss*, 2012WL6621691 (E.D. Mo 2012), the Court recognized that

> documents and communications Defendant directed to [Plaintiff] in Missouri, to the effect that Defendant would invest Plaintiff's funds safely and as specified by Plaintiff, were misleading and sent in an effort to defraud Plaintiff, a Missouri citizen. "Taking [Plaintiff's] allegations as true, as this Court must, this case presents a ready example of facts supporting specific jurisdiction." *Bryant*, 310 S.W.3d at 235. In other words, by "purposely directing [his] fraudulent communications at [a] resident[ ] of [Missouri], the defendant [ ] should have realized that the brunt of the harm would be felt there ... and [he] should have reasonably anticipated being haled into court there." *Oriental Trading Co.*, 236 F.3d at 943 (citation

> omitted). See also *Bryant*, 310 S.W.3d at 234 ("Numerous cases from other jurisdictions have held that the sending of fraudulent documents into a state constitutes a purposeful availment of the privilege of conducting activities within the forum state and provides the minimum contacts necessary to support personal jurisdiction in that state when the claim arises out of those contacts, as it does here."

*Id.* at *4. Such is not the situation in this case. Defendant Shahid sent nothing to Plaintiff to entice him to invest.

In considering the case at bar, the Court observes that there are rarely bright line rules accompanying jurisdictional questions. These types of legal inquiries require a court to weigh and balance a number of factors and make a decision based on the totality of the circumstances. *Kulko v. Superior Court of California*, 436 U.S. 84, 92 (1978) ("... the facts of each case must be weighed to determine whether the requisite affiliating circumstances are present ... We recognize that this determination is one in which few answers will be written in black and white. The greys are dominant and even among them the shades are innumerable.") (internal quotation omitted).

Here, personal jurisdiction over this Defendant is not justified by the facts of this case. Defendant clearly lacks any traditional business contacts in Missouri, such as offices, agents, representatives, employees, or property holdings. Defendant has never sent any representatives to Missouri. Defendant did not

direct any communication to Plaintiff. Significantly, Defendant disavows any connection with the inducement, fulfilment or had any funds transferred to him. Finally, though Defendant exchanged some emails with Plaintiff in Missouri, those emails were initiated by Plaintiff, not Defendant. In sum, given the complete absence of any substantial connection between Defendant and the forum, the Court cannot exercise personal jurisdiction over Defendant solely because the effects of the Plaintiff's alleged injury are most strongly felt in Missouri

## Conclusion

For the reasons described above, the Court has determined that it lacks personal jurisdiction over Defendant Shahid Ali Bangash. The Court therefore grants Defendant's Motion to Dismiss for Lack of Jurisdiction and does not address Defendant's alternative bases for dismissal, including forum non convenient and improper service.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Shahid Ali Bangash's Motion to Dismiss, [Doc. No. 14], is GRANTED.

**IT IS FURTHER ORDERED** that Defendant Shahid Ali Bangash is dismissed from this action.

Dated this 28th day of February, 2014.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE